**Opinion filed August 28, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00041-CV

_____

## IN THE INTEREST OF R.R., JR.; E.R.R.; E.B.R.; AND J.S.R., CHILDREN

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 14-02-16759**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of R.R., Jr.; E.R.R.; E.B.R.; and J.S.R. and appointed the Department of Family and Protective Services to be the permanent managing conservator of each of the children. The mother appeals. We affirm.

### I. *Issues Presented*

The mother presents four issues on appeal. In her first two issues, she challenges the sufficiency of the evidence to support the trial court's finding that the termination of her parental rights is in the best interest of the children. *See* TEX.

FAM. CODE ANN. § 161.001(2) (West 2014).[1] In her third and fourth issues, she challenges the sufficiency of the evidence to support the trial court's finding that the termination of the father's parental rights is in the best interest of the children. *See id.*

## II. *Termination Findings and Standards*

As the mother is the sole appellant in this appeal, we will limit our discussion of the findings and evidence to those that concern the mother. The termination of parental rights must be supported by clear and convincing evidence. *Id.* § 161.001. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical

---

[1] We note that the legislature has recently amended Section 161.001 such that the text of Section 161.001 is now contained in Section 161.001(b). *See* Act of Mar. 30, 2015, 84th Leg., R.S., S.B. 219, art. 1, § 1.078 (West) (to be codified as an amendment to TEX. FAM. CODE ANN. § 161.001) (effective Apr. 2, 2015). In this opinion, we refer to the section as it was numbered at the time of trial and as reflected in the trial court's order of termination.

needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed four of the acts listed in Section 161.001(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children; constructively abandoned the children; and failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent for abuse and neglect. The mother does not challenge any of these findings. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the children.

III. *Evidence at Trial*

The record shows that the Department became involved with the children, who range in age from three to ten years old, in November of 2013 for the current

case. Mayra Ruiz, an investigator with the Department, went to the children's maternal grandmother's home, where the children were residing. Ruiz testified that the home was inappropriate for the children because "[t]here was no proper sleeping arrangement for all of the children," "[t]here was not enough food supply for everyone living there," and "[t]here was holes in the walls, on the floors, and the house was not kept up." The Department found the mother "reason to believe of neglectful supervision for allowing her children to be there." The Department made a finding that the home was not appropriate and, with the mother's help, placed the children in a voluntary placement with their paternal aunt and uncle.

Ruiz could only contact the mother, who had left the children at the maternal grandmother's home, by telephone for about the first month of her investigation. Ruiz requested that the mother take a urinalysis drug test, which the mother did not complete because she arrived at the drug testing site "shortly before they were going to close." Ruiz requested that the mother return for a hair follicle test, but the mother never returned. Ruiz testified that, when she met with the mother during her investigation, the mother had admitted to using "methamphetamines, marijuana, and ice" for about two months and that she had used "ice" "two times per week." Ruiz testified that the mother also admitted that she had used drugs in the home at least three times with the children present.

Ruiz testified to the mother's criminal history. The mother had received a deferred adjudication "for abandonment/endangerment of a child" for an occurrence in 2010 when a drug raid was conducted at the parents' home. E.B.R., who was the youngest child at that time, tested positive for cocaine when the raid occurred. The mother had a hearing scheduled regarding her probation, and she testified that she had been incarcerated for five months during the pendency of the termination proceeding. The father testified that the mother had been arrested for burglary of a habitation in 2010. The Department was involved with the children at the time of

4

the raid in 2010 and also in 2005, but Ruiz testified that the 2005 investigation could not be completed because the mother "relocated and was not able to be found."

Ladonne Nighton, a conservatorship supervisor with the Department, testified that the mother had been ordered to complete parenting classes, a drug and alcohol assessment, a psychological evaluation, individual counseling, a Mental Health Mental Retardation (MHMR) evaluation, and random drug screens. The mother only submitted one sample for drug testing, which came back negative, but she failed to submit to any other drug tests that the Department requested. The mother completed the drug and alcohol assessment but did not complete any of the other court-ordered services.

The mother testified that she did not have a phone or any way to communicate with her children during the pendency of this case and that she did not have any form of transportation. She had not had any face-to-face visits with her children in about fourteen months, but she did say that she had called her children once or twice. The mother acknowledged that it was not "best for [her] kids to come home with [her]" at the time of trial because she was "waiting for a bed for rehab." The mother said that she "got addicted to drugs" after the father went to prison in 2013 but that she never used drugs while the children were in the home. The mother agreed that the children should not have to wait for her to "get [her] life together" and that having no form of communication put the children in danger. The mother had no job and was "staying with a man" for her housing. The father testified that he had heard from his family that the mother had tried visiting the children but did not do so because "she's got a drug problem."

The Department's plans for the children included termination of the parents' rights and adoption by the current relative placement. The aunt and uncle with whom the children had been placed were agreeable to the Department's plans. Nighton testified that she believed the Department's plans were in the best interest of the

5

children because the children were in a safe, stable home where their needs were being met by relatives that were willing to adopt the children. The children's attorney ad litem and their guardian ad litem (a CASA representative) both agreed with the Department that termination and relative adoption was in the best interest of the children.

IV. <em>Analysis: Best Interest</em>

<em>A. Issues One and Two: The Mother's Rights</em>

In her first and second issues, the mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that terminating her parental rights is in the best interest of the children. The mother argues that appointment of the placement parents as permanent managing conservators and her as a possessory conservator would have been in the best interest of the children. She does not challenge the trial court's findings under Section 161.001(1). We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the mother and the relatives with whom the children have been placed and who are willing to adopt the children; the plans for the children by the Department; the instability of the mother's home; the stability of the children's placement; and the acts and omissions of the mother indicating that the parent-child relationship was not a proper one, we hold that the evidence is legally and factually sufficient to support the finding that termination of the mother's parental rights is in the children's best interest. *See id.* We overrule the mother's first and second issues.

*B. Issues Three and Four: The Father's Rights*

In the mother's third and fourth issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that the termination of the father's parental rights is in the best interest of the children. The father did not appeal the termination order. The Department contends that the mother cannot raise an issue on appeal on behalf of the father. We agree that the mother has no standing to complain of an error that did not harm her. The law is well established that a party on appeal may not complain of errors that do not injuriously affect her or that merely affect the rights of others. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000); *In re H.M.J.H.*, 209 S.W.3d 320, 321 (Tex. App.—Dallas 2006, no pet.); *In re D.C.*, 128 S.W.3d 707, 713 (Tex. App.—Fort Worth 2004, no pet.); *In re P.R.*, 994 S.W.2d 411, 416–17 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.) (citing *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 150–51 (Tex. 1982)), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002). The father did not appeal, and the mother has not demonstrated how she was harmed by the termination of the father's parental rights. In the absence of some justiciable interest in the father's rights, the mother cannot complain of the portion of the termination order that relates to the father's parental rights. *See Torrington*, 46 S.W.3d at 843. We overrule the mother's third and fourth issues.

## V. *This Court's Ruling*

We affirm the order of the trial court.

MIKE WILLSON

August 28, 2015                                    JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7